[Nos. 22497–2–I; 22805–6–I.  Division One.  August 7, 1989.]

JOHN DOE, *Individually and as Representative,* ET AL,
*Respondents,* v. SPOKANE AND INLAND EMPIRE
BLOOD BANK, ET AL, *Appellants.*[†]

[†]This opinion was reported in the advance sheets of the Washington Appellate Reports as JOHN DOE, *Individually and as Representative,* ET AL, *Respondents,* v. SNO–ISLE COMMUNITY BLOOD BANK, *Defendant,* SPOKANE AND INLAND EMPIRE BLOOD BANK, ET AL, *Appellants.*

*Bradford M. Gierke, Sandra B. Bobrick, Philip J. Welchman,* and *Gierke, Curwen, Metzler & Bobrick,* for appellant Spokane and Inland Empire Blood Bank.

*Reed P. Schifferman, Richelle G. Bassetti,* and *Lane, Powell, Moss & Miller,* for appellant Whatcom Pathology Laboratory and Blood Bank.

*Jeffrey C. Grant, Margaret E. Wetherald,* and *Betts, Patterson & Mines,* for respondents.

[As amended by order of the Court of Appeals October 11, 1989.]

COLEMAN, C.J.—Spokane and Inland Empire Blood Bank (Spokane) and Whatcom Pathology Laboratory and Blood Bank (Whatcom) appeal from trial court orders denying

them attorney's fees and costs. We vacate the trial court order and remand for further proceedings.

On July 30, 1986, John Doe filed a class action complaint for personal injuries naming, among others, Spokane and Whatcom as defendants. Doe is a hemophiliac who contracted the acquired immune deficiency syndrome (AIDS) as a result of using blood products contaminated with the human immunodeficiency virus. The defendants named in the lawsuit produce and distribute anti–hemophilia factors (AHF), a blood product used to treat hemophilia.

Two forms of AHF product are involved in this case— cryoprecipitate, a frozen product derived from a single donor, and commercial concentrate, a freeze–dried product derived from the blood of many donors. Doe's complaint identified several groups of defendants, including plasma centers, blood processors, pharmaceutical manufacturers, AHF distributors, pharmacies, and hospitals.

As to Whatcom and Spokane, Doe alleged that each "was a plasma center which obtained plasma and/or other blood products from paid donors for use in processing AHF products for use by hemophiliacs."[1] Doe alleged that he and other hemophiliacs contracted AIDS as a proximate result of the collection, processing, and distribution of AHF products by the defendants. Doe admitted in depositions that he had never had any contact with blood products supplied by appellants. At the time he filed for class certification on February 24, 1987, Doe narrowed his claims so as to encompass only those defendants involved with commercial concentrate.

The case was assigned to King County Superior Court Civil Track I, and pursuant to local court rules, the court declined to hear any summary judgment motions until it decided whether to certify the class. Eventually the court

---

[1]Contrary to appellant Whatcom's assertion, Doe's complaint encompassed parties dealing with both cryoprecipitate and commercial concentrate. Accordingly, there is no merit to Whatcom's argument that it is entitled to sanctions because it only distributed cryoprecipitate but the complaint only asserted claims against parties dealing with concentrate.

denied Doe's petition for certification.[2] Spokane and Whatcom filed motions requesting attorney's fees. They both argued that they were entitled to attorney's fees and costs because Doe admitted in deposition that he had not had any contact with, or used a blood product supplied by, either of them. They argued that because Doe admitted not having been injured by either of them, preliminary research by Doe's attorney should have revealed that Doe's complaint against them was not justified by fact or law.

In its oral ruling denying Whatcom's motion, the court explained why it was not awarding sanctions:

> I have a hard time saying that the plaintiff's claim against your client was frivolous when I have previously criticized the plaintiff in the hearing on the class certification for not suing the people who make and distribute cryoprecipitate, because the information supplied in connection with class certification was that at the present time that product, as a matter of fact, was the more dangerous.
>
> I told the plaintiff that I thought he had made a strategic error. For me to now say that it is frivolous to have sued your client in the first place, I think simply would be incorrect. Whether he should have let you out sooner, once he had redirected the focus of the lawsuit [limiting claims only to those against defendants involved with commercial concentrate], I think again that's a strategic decision, but I can't look at it and say that it is frivolous or that it really requires sanctions.
>
> Now, the second issue, and one which I am not really sure you raised, but I assume that every other defendant is going to raise sooner or later, is, "My client did not provide product to this plaintiff. Before he knew that he was going to have this class certified, isn't it frivolous to have sued me at all?" That's actually a bigger problem for the plaintiff.
>
> At the same time I have to look at the flip side, which is the potential for his malpractice, given the Tort Reform Act, and

---

[2]The court made extensive findings of fact as to why this action could not be certified. Among other reasons, the court found that a verdict on liability by the proposed class would not run to its members; that each individual class member would require a separate trial to prove causation, damages, and breach of duty as to individual defendants; that respondent Doe was not even a member of the class he sought to represent because his infection was caused by use of cryoprecipitate, not concentrate; that respondent had a claim against only one of the named defendants; and, finally, that even if an appropriate class representative could be found, the class remained uncertifiable because each member would still need to litigate an individual claim.

the fact that he wouldn't have necessarily had time to get a ruling on his petition for class certification before suing all the defendants in order to not determine that he wasn't ultimately going to have a claim against them.

Subsequently the court also denied Spokane's motion for costs and fees. Spokane and Whatcom appeal from the court's denial of their motions for sanctions.

We first address whether appellants were entitled to sanctions under CR 11 which provides:

> The signature of a party or of an attorney constitutes a certificate by him that he has read the pleading, motion, or legal memorandum; that to the best of his knowledge, information, and belief, formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading, motion, or legal memorandum is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or legal memorandum, including a reasonable attorney fee.

The determination whether a violation of CR 11 has occurred is vested in the sound discretion of the trial court. *Cooper v. Viking Ventures,* 53 Wn. App. 739, 742, 770 P.2d 659 (1989). If the court determines that a violation has occurred, the rule makes the imposition of sanctions mandatory. *Miller v. Badgley,* 51 Wn. App. 285, 301, 753 P.2d 530, *review denied,* 111 Wn.2d 1007 (1988). The trial court, however, retains broad discretion regarding the nature and scope of sanctions, which could range from a reprimand to the full award of attorney's fees and other appropriate penalties. *Badgley,* at 303.

A plaintiff's complaint may subject that party to CR 11 sanctions if three conditions are met: (1) the action is not well grounded in fact; (2) it is not warranted by existing law; and (3) the attorney signing the pleading has failed to conduct reasonable inquiry into the factual or legal basis of the action. CR 11. The reasonableness of an attorney's

inquiry is evaluated by an objective standard. *Badgley,* at 299–300.

> Whether or not a reasonable inquiry has been made depends on the circumstances of a particular case. Factors that the trial court may consider include the time that was available to the signer, the extent of the attorney's reliance upon the client for factual support, whether a signing attorney accepted a case from another member of the bar or forwarding attorney, the complexity of the factual and legal issues, and the need for discovery to develop factual circumstances underlying a claim.

*Badgley,* at 301–02.

We find no basis in the present record that would support a conclusion that respondent's complaint against appellants was well grounded in fact or warranted by the law. See discussion *infra.* CR 11 does not provide for sanctions, however, merely because an action's factual basis proves deficient or a party's view of the law proves incorrect; CR 11 is not a mechanism for providing attorney's fees, otherwise unavailable, to a prevailing party. *See Thomas v. Capital Sec. Servs., Inc.,* 836 F.2d 866, 874–75 (5th Cir. 1988). The principal concern of the rule is whether the attorney acted reasonably in taking the action. *See Cabell v. Petty,* 810 F.2d 463, 466 (4th Cir. 1987). Accordingly, in order for the trial court to rule on a party's motion for CR 11 sanctions, it is essential that the court inform itself and make findings as to the inquiry undertaken by the nonmoving party. The court's focus should begin with the language of the rule itself and center on the attorney's: "knowledge, information, and belief, formed after reasonable inquiry . . ." CR 11.

> If an attorney's conduct appears to fall within the scope of Rule 11, the court must first examine the actions at issue according to a standard of objective reasonableness. At this stage, the inquiry focuses only on whether a reasonable attorney in like circumstances could believe his actions to be factually and legally justified.

*Cabell,* at 466.

The record in the instant case is silent as to what prefiling inquiry was undertaken by respondent's attorney. Without relevant findings in this regard, there can be no

objective evaluation of the reasonableness of the attorney's prefiling conduct. Conceivably, respondent's attorney may have been in possession of information justifying a belief that there was an adequate factual or legal basis for filing this claim, in which case there was not a CR 11 violation. It is just as conceivable, however, that inadequate inquiry was undertaken or that there was simply an unjustified misapprehension of the law of class actions, in which case CR 11 was violated. Because we cannot determine whether CR 11 was violated without speculating as to respondent's attorney's conduct, we cannot rule on the question as a matter of law. We must, therefore, remand this cause to the trial court for further proceedings. *See Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156, 158 (3d Cir. 1986) (where lawsuit "patently had no legal merit", but trial court denied sanctions without discussion, cause remanded to trial court for inquiry and findings regarding Fed. R. Civ. P. 11 criteria, including whether there was competent legal research and adequate factual inquiry).[3] On remand, the trial court should inquire into, and make relevant findings regarding, the research into the law and the investigation into the facts conducted by respondent's attorney prior to commencing this lawsuit. Findings relevant to this inquiry would include whether preliminary legal research into class actions was conducted before this claim was filed. It would be useful to know what areas of the law were researched and in what detail. An attorney's time records could provide useful information in this area.

It would also be useful to know what knowledge the attorney had regarding the factual basis of the claims asserted against appellants. It is undisputed that respondent, at the time of his deposition, denied having any contact with these appellants. Presumably, respondent's attorney would have been aware of this fact as a result of interviewing his client at a very early stage in the factual

---

[3]While the trial court in the instant case did discuss its reasons for not awarding CR 11 sanctions, those reasons did not address the relevant CR 11 criteria.

investigation of the case. The court should inquire into whether respondent's attorney was somehow misled in this regard, or misunderstood this fact, or possessed other facts not evident in this record that suggested a claim could lie against appellants.

We are particularly sensitive to the trial court's concern that the pending tort reform act may have prevented respondent's attorney from undertaking reasonable inquiry. We cannot, however, decide whether the pending tort reform act provides a legitimate defense to CR 11 sanctions in the absence of findings of fact regarding the manner in which that legislation may have interfered with respondent's ability to undertake reasonable inquiry.[4] This record is silent even as to the most fundamental fact in this regard, namely how long prior to the effective date of the tort reform legislation respondent first approached counsel regarding this action. If it was weeks or months, then there would be no reasonable basis for an argument that the pending legislation somehow prevented reasonable inquiry into the factual or legal basis for this action.

Moreover, if it proves to be the case that the pending tort reform legislation forced respondent's attorney to act precipitously and file this action without undertaking reasonable inquiry, and the trial court accepts this as a defense to the motion for sanctions based on the filing of the complaint, that still would not dispose of the question whether CR 11 was violated. It appears inescapable that at

---

[4]We do not reach the question whether, as a matter of law, initiating a lawsuit without reasonable prefiling inquiry in order to avoid a deadline such as a statute of limitations or, as in this case, the effective date of tort reform legislation, is a defense to CR 11 sanctions. *Compare Cabell,* at 466 (filing of action as a speculative effort to find some liable party prior to expiration of statute of limitations is no defense to Fed. R. Civ. P. 11 sanctions) *with Miller v. Badgley,* 51 Wn. App. 285, 299–300, 753 P.2d 530 (factors a trial court may consider when deciding whether reasonable inquiry was undertaken include time that was available to the attorney signing the pleading), *review denied,* 111 Wn.2d 1007 (1988). Should it prove that the tort reform legislation indeed interfered with respondent's ability to conduct reasonable inquiry, then the trial court is in the better position to rule on this question because it will enjoy the benefit of a proper factual record and the parties' briefing on the issue.

some subsequent point, respondent's attorney would have had the opportunity to conduct reasonable investigation and would have learned that the action was neither justified by fact nor law. While CR 11 imposes no affirmative duty on an attorney to dismiss an action once it has become unreasonable to continue its prosecution, CR 11 does apply to all signed documents filed in the course of a lawsuit. *Capital Sec. Servs., Inc.,* 836 F.2d at 874–75. Accordingly, once reasonable inquiry would have revealed that appellants should be dismissed from this action, respondent's signature on any subsequent pleading, memorandum, or motion in furtherance of this lawsuit against appellants would have been a violation of CR 11. *Capital Sec. Servs., Inc.,* 836 F.2d at 875. (Even if a pleading satisfies CR 11 when filed, CR 11 sanctions are nonetheless available for subsequent documents filed in prosecution of that action if it has proven in the meantime to be unjustified.)

While the absence of findings pertinent to respondent's prefiling inquiry has prevented us from ruling on whether the inquiry undertaken was reasonable, we have been able to review the factual and legal basis of respondent's lawsuit. To assist the trial court in reaching a proper disposition of appellant's motion once the essential factual elements are evident, we provide the following analysis, based only on what the presently existing record reveals, regarding whether respondent's lawsuit against appellants was justified in fact and law.

The record before this court contains no basis in fact for respondent having named appellants as defendants in this action. For a plaintiff's negligence claim to be well grounded in fact, the plaintiff must be able, at an absolute minimum, to identify some injury suffered by the plaintiff that was proximately caused by the named defendant; in other words, the plaintiff must have standing to bring the action. 7B C. Wright, A. Miller & M. Kane, *Federal Practice* § 1766, at 315–17 (1986). Respondent admitted in

deposition that he had no contact with either of the appellants. Accordingly, respondent had no standing to bring this action.

█ The procedural mechanism of a class action does not confer standing that a plaintiff does not otherwise have in an individual capacity. *Weiner v. Bank of King of Prussia,* 358 F. Supp. 684, 694–95 (E.D. Pa. 1973); *Chevalier v. Baird Sav. Ass'n,* 66 F.R.D. 105, 108–09 (E.D. Pa. 1975). A class representative, therefore, cannot litigate a claim against a defendant who the representative cannot sue individually. *La Mar v. H&B Novelty & Loan Co.,* 489 F.2d 461, 466 (9th Cir. 1973).

> An exception to this conclusion has been made in several cases in which the defendant class was composed of public officials, however. In these cases standing has been found even though the representative was injured by the conduct of only one of the officials because the court determined that the defendants were so closely related that they should be treated substantially as a single unit. This approach—sometimes referred to as the "juridical link" test—applies in cases in which as a matter of law each official must act in the same manner, so that the plaintiff class claims are identical for all defendant class members. . . . If the conduct being challenged by the plaintiff class depends on facts peculiar to each defendant's activities, however, then there is no juridical link and the named plaintiffs will lack standing to pursue the action against the defendant class.

(Footnotes omitted.) 7B C. Wright, A. Miller & M. Kane, *Federal Practice* § 1785.1, at 148–50 (1986); *see also Hass v. Pittsburgh Nat'l Bank,* 526 F.2d 1083, 1095 n.15 (3d Cir. 1975); *La Mar,* at 466.

The existence of a juridical link among defendants is most often found in actions asserted against a class of government officials required by law or policy to act in a particular manner. *See, e.g., Harris v. Graddick,* 593 F. Supp. 128, 136–37 (M.D. Ala. 1984) (defendant county officials who appoint poll officials); *Doss v. Long,* 93 F.R.D. 112, 120 (N.D. Ga. 1981) (all judges sued, as a class, who were paid under challenged fee system); *Kendall v. True,* 391 F.

Supp. 413, 417 (W.D. Ky. 1975). The juridical link is not just limited, however, to that situation, but also exists when a general relationship among the defendants allows the plaintiff classes' claims to relate to the defendant class as a whole. *Thillens, Inc. v. Community Currency Exch. Ass'n of Ill., Inc.*, 97 F.R.D. 668, 676 (N.D. Ill. 1983). A juridical link, for example, has been found where the defendants' actions were determined by a contract. *In re Activision Secs. Litig.*, 621 F. Supp. 415 (N.D. Cal. 1985). Defendants may be juridically linked by the operation of a statute. *Ragsdale v. Turnock*, 625 F. Supp. 1212, 1223 n.11 (N.D. Ill. 1985) (doctors and patients allowed to prosecute class claim against all Illinois state attorneys in challenge to statute requiring abortions to be performed in hospitals). Finally, a juridical link exists where the defendants act together in concert, conspiracy, or collusion. *La Mar*, at 470; *Washington Educ. Ass'n v. Shelton Sch. Dist. 309*, 93 Wn.2d 783, 790–91, 613 P.2d 769 (1980) (court erred in dismissing class action where some individual plaintiffs had no contact with some individual school district defendants in class action suit; because claims involved allegation of systemic discrimination, all the plaintiffs were presumably injured by the defendants' collusion).

There was no allegation in respondent's complaint of systematic or concerted behavior by these defendants amounting to a juridical link. When petitioning for certification, respondent argued that the fact that cryoprecipitate and commercial concentrates were generic products collected, processed, and distributed by the named defendants in this action somehow amounted to a concert of action. Such an allegation finds absolutely no support in this record. The tremendous disparity in the types of defendants named in this suit, in the degree to which they were individually involved with AHF products, and in the manner in which they handled the product belies any possibility that these defendants were linked in such a way that they formed an identifiable unit against whom the plaintiff class could assert claims. *Thompson v. Board of Educ.*, 709 F.2d

1200, 1204–05 (6th Cir. 1983) (teachers did not have standing to sue school boards for whom they had not worked because the challenged maternity leave policies were not being applied statewide by the defendant school boards, but instead each board was adopting its own maternity leave policy and so there was no juridical link among defendants); *Akerman v. Oryx Communications, Inc.,* 609 F. Supp. 363, 376 (S.D.N.Y. 1984) (proposed class representatives had standing only as to the immediate sellers of securities and not as to other security underwriters from whom they had not individually purchased securities, and no "unified policy" linked the defendants).[5]

The record in this case is silent as to whether respondent's attorney knew that respondent had not been injured by appellants at the time of commencing this action, or even knew of any other hemophiliac in Washington who claimed to have been injured by these parties. It is also silent as to whether he possessed any other knowledge relevant to the factual basis for this claim against appellants, such as some conspiracy, collusion, or other possible juridical link among these defendants. If he did know that respondent had not been injured by appellants and he was in possession of no other facts compensating for that crucial absence, then reasonable inquiry should have revealed that there was no basis in fact for filing this action. We find no basis in this record for concluding that respondent's claims against appellant were well grounded in fact. We also conclude that the existing record establishes that the law does not warrant the attempt to certify this class action. Authoritative precedent precludes a class of plaintiffs from

---

[5]Technically these authorities, by establishing that respondent lacked standing to bring this action, establish why respondent's action was not warranted by law. They also, however, are relevant to the determination of whether this action was well grounded in fact. The significance of the absence of any identifiable injury suffered by respondent, or any other member of this asserted class, as a result of the conduct of these particular defendants is only apparent in the context of the applicable law.

asserting claims against multiple defendants when the individual plaintiffs' claims are only against particular defendants who are unrelated to the defendants against whom the other plaintiffs' claims are asserted.

The rules for class certification are set forth in CR 23, which provides in part:

> (a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

While there is no express prohibition in CR 23 against a class action involving multiple plaintiffs and multiple defendants, not all of whom have had contact with members of the opposing class, case law bars certification of this kind of action. *Angel Music, Inc. v. ABC Sports, Inc.,* 112 F.R.D. 70, 77 (S.D.N.Y. 1986); *La Mar v. H&B Novelty Loan Co.,* 489 F.2d 461, 465–66 (9th Cir. 1973).[6]

The court in *La Mar* disposed of this issue. *La Mar,* a consolidated case, involved two similar fact patterns. In one case, a class representative brought an action against two airlines from which he purchased a ticket and six other airlines engaging in what he alleged was statutorily prohibited overcharging. The representative sued on behalf of himself and all others similarly overcharged. *La Mar,* at 463. In the other case, the class representative was a pawnshop customer suing all the pawnshops in Oregon on behalf of all

---

[6]Certification is barred in these circumstances because unless the class representative has a claim against all the individual defendants, or in the absence of a direct claim, there is a juridical link among the defendants, the class representative's claim cannot possibly satisfy the typicality requirement of CR 23. *Angel,* at 77; *La Mar,* at 466. Moore notes that there is another theory justifying this rule, namely that under the rules of joinder "if the representative party could not join the defendants in an individual action, the fact that he purports to represent a class in each claim should not make joinder proper." 3B J. Moore & J. Kennedy, *Federal Practice* ¶ 23.04[2] n.41 (2d ed. 1987).

their customers alleging truth in lending violations. *La Mar,* at 462.

In both cases

the plaintiff's cause of action, although similar to that of other members of the class, is against a defendant with respect to whom the class members have no cause of action. . . . [T]he representative plaintiff's cause of action is against a defendant unrelated to the defendants against whom the cause of action of the members of the class lies.

*La Mar,* at 465. The court reasoned that in that circumstance, the class representative could not satisfy the typicality requirement of rule 23(a) because

a plaintiff who has no cause of action against the defendant can not "fairly and adequately protect the interests" of those who do have such causes of action. This is true even though the plaintiff may have suffered an identical injury at the hands of a party other than the defendant and even though his attorney is excellent in every material respect.

*La Mar,* at 466. Similarly, in the instant case, while the respondent may have had a cause of action against one or more of the named defendants, the remaining defendants were entirely unrelated to his cause of action. Accordingly, there was no reasonable possibility that respondent could serve as class representative or succeed in having the asserted class certified. *La Mar,* at 465–66.

Respondent argues that language in *In re Northern Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.,* 693 F.2d 847, 855 (9th Cir. 1982), suggests that such a class could be certified. Any reasonable reading of *Dalkon,* however, reveals that it is entirely consistent with *La Mar* and the other cases barring this kind of class action. In *Dalkon,* the court refused to certify a class comprised of women injured by a birth control device who sued the manufacturer and their prescribing physicians. The court reasoned that some "common questions of law and fact cannot be used to create a class of plaintiffs who have claims against some common defendants and some separate and uncommon defendants." *Dalkon,* at 855. The instant case falls precisely within this language.

Nonetheless, respondent cites the following language in *Dalkon* as authority for the attempt to certify this case: "We do not decide or suggest that the typicality requirement of Rule 23(a)(3) may never be met when multiple plaintiffs sue different defendants. But the requirement is not met in this case." *Dalkon,* at 855. This language, however, merely signifies the *Dalkon* court's recognition that a class of plaintiffs may assert their claim as a class against a juridically linked group of defendants. *La Mar,* at 466; *accord, Washington Educ. Ass'n v. Shelton Sch. Dist. 309,* 93 Wn.2d 783, 790–91, 613 P.2d 769 (1980). The *La Mar, Shelton,* and *Dalkon* cases were all decided prior to the time respondent filed this action. Preliminary legal research prior to filing this action should have revealed to respondent that, under these cases, the naming of defendants with whom respondent had no contact, or among whom there was no evidence of a juridical link, was not warranted by law. These cases clearly and unequivocally bar class certification in such circumstances. They are not reasonably distinguishable from the instant facts as they presently exist in this record. *See Hale v. Harney,* 786 F.2d 688, 692 (5th Cir. 1986) (trial court properly awarded rule 11 sanctions where precedent foreclosed party's action and preclusive "authorities . . . are Supreme Court ones, not obscure pronouncements done in a corner; slight research would have discovered them.").

Respondent takes issue with this conclusion, arguing that, in the instant case, the trial court did not consider the respondent's absence of a claim against each defendant to be fatal to certification because the court assumed a more representative plaintiff or group of plaintiffs could be substituted later. What the trial court actually said, however, in its order denying certification was that even if it assumed that a plaintiff with standing could be substituted, the obstacles to certification were insurmountable.

Respondent also argues that the trial court presented tenable reasons for not imposing sanctions. We disagree. In

the absence of findings on the issue of the inquiry undertaken by respondent into the facts and law of this case, there was no tenable basis upon which the trial court could conclude whether respondent's attorney had acted reasonably and, hence, whether CR 11 was violated. The trial court's stated reason for not imposing CR 11 sanctions was that the court felt that respondent made a strategic error in deciding to limit the action only to claims involving commercial concentrate and that it would be inconsistent for the court to criticize that decision and then to award sanctions for having sued parties involved with cryoprecipitate in the first place. This reason, however, is not relevant to whether the naming of these defendants in a lawsuit when respondent had no individual claim to assert against them was well grounded in fact or warranted by law.

Finally, we address respondent's argument that even if the filing of this action was not well grounded in fact or warranted by law, CR 11 was nonetheless not violated because respondent had a good faith argument to make for the extension of the law to accommodate this action. Respondent further argues that to impose sanctions in such an instance would chill lawsuits designed to correct mistakes and injustices in the law. These arguments are not well taken.

When a defendant is brought into a lawsuit for which there is no basis in law or fact and reasonable inquiry would have revealed that circumstance, then commencing the action wrongfully forces the defendant to incur the significant expenses associated with defending that lawsuit. In such instances, CR 11 provides a remedy. *See* 2A J. Moore, *Federal Practice* ¶ 11.02[3], at 11–20 (2d ed. 1987) ("Rule 11 sanctions certainly should be imposed for the filing of . . . causes of action plainly foreclosed by long–standing and authoritative precedent[.]"). However, CR 11 expressly provides a defense against a motion for sanctions if an otherwise unwarranted action was undertaken as "a good faith argument for the extension, modification, or reversal

of existing law . . ." CR 11. Good faith arguments for changing the law do not constitute the kind of wrongful conduct CR 11 remedies.

> In framing this standard [for awarding rule 11 sanctions] we do not intend to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law. Vital changes have been wrought by those members of the bar who have dared to challenge the received wisdom, and a rule that penalized such innovation and industry would run counter to our notions of the common law itself. Courts must strive to avoid the wisdom of hindsight in determining whether a pleading was valid when signed, and any and all doubts must be resolved in favor of the signer. But where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands, Rule 11 has been violated.

*Eastway Constr. Corp. v. New York,* 762 F.2d 243, 254 (2d Cir. 1985).

The instant lawsuit was not premised on achieving an extension or modification of existing law. There is nothing in the record before this court to suggest that respondent ever presented an argument for certification to the trial court in the context of admitting that existing authority does not support the filing of this class action, but that there was a good public policy argument for certifying the class notwithstanding existing precedent. Instead, respondent consistently argued for certification within the context of existing law. Respondent did not argue to the trial court that there were compelling public policy reasons for allowing a class representative to prosecute an action against a party in relation to whom the representative had no standing, or for certifying a class action where the plaintiffs' claims run to defendants individually and not as a group. Respondent did not argue that the juridical link exception to the standing requirement should be modified to include unrelated defendants.

The absence of such arguments is not surprising, given that the rules regarding class actions are intended to streamline litigation by resolving multiple parties' claims

simultaneously. As the discussion of class actions, *supra,* demonstrates, the claims of each member of respondent's asserted class would have to be resolved in separate trials, thereby defeating the purpose of the class action procedure. It is difficult to conceive of any reasonable argument for modifying class action rules to accommodate the facts of this case. In short, respondent's claim that the filing of this action was based on good faith arguments for the extension or modification of the law appears in this record for the first time only as a defense to appellant's motion for sanctions under CR 11 and was never employed as a tactic to earn certification in the trial court or on appeal.[7] Raising the "good faith" argument for the first time in defense of a motion for CR 11 sanctions is no substitute for conducting preliminary research to discover whether naming particular defendants in a summons and complaint has a proper foundation in law or fact.

Finally, we note that appellants also argue that they are entitled to attorney's fees under RCW 4.84.185. At the time this motion was decided, sanctions were available under that statute for frivolous lawsuits advanced without reasonable cause only after "written findings by the judge" to that effect. Former RCW 4.84.185; *Fluke Capital & Mgt. Servs. Co. v. Richmond,* 106 Wn.2d 614, 625, 724 P.2d 356 (1986). RCW 4.84.185 has been amended, however, to allow for attorney's fees for frivolous actions resolved prior to trial, and the effect of the amendment is retroactive. *Camer v. Seattle Sch. Dist. 1,* 52 Wn. App. 531, 539, 762 P.2d 356 (1988). Accordingly, on remand the trial court should also decide whether appellants are entitled to a remedy under this statute and enter appropriate findings of fact in support of that decision as required by the statute. RCW 4.84-.185.

---

[7]Respondent's argument that this lawsuit was based on a good faith attempt to extend or modify the law is undermined by the fact that appellant has not sought review of the certification issue in this court.

The trial court's order denying appellant's motions for costs and fees is vacated and this cause is remanded for further proceedings consistent with this opinion.

SWANSON and SCHOLFIELD, JJ., concur.

After modification, further reconsideration denied October 11, 1989.