**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| KENNETH RIDOUT AND ERICA RIDOUT, husband and wife, and the marital community composed thereof,<br><br>Plaintiffs,<br><br>v.<br><br>HEDGEROW, LLC, a Washington limited liability company; 3 S MANAGEMENT SERVICES, LLC, a Washington limited liability company; PACIFIC EDGE MANAGEMENT, LLC, a Washington limited liability company; BPCI EARTHWORKS, LLC, a Washington limited liability company; and THE RILEY GROUP, INC., a Washington corporation,<br><br>Defendants,<br><br>OWEN H. BENSON, a married individual as his separate estate,<br><br>Appellant,<br><br>DARRELL S. MITSUNAGA,<br><br>Respondent. | No. 84249-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, J. — Owen Benson, a defendant in the underlying litigation, appeals the trial court's denial of his CR 11 motion for sanctions against Darrell Mitsunaga, the attorney who represented the plaintiffs. Benson does not establish that the trial court

No. 84249-8-I/2

abused its discretion in denying the motion. Therefore, we affirm.

I.

Kenneth and Erica Ridout own property in Kenmore, Washington (Ridout Property). Benson owns the property directly to the east of the Ridout property (Benson Property), and Hedgerow, LLC, owns property to the east of the Benson Property (Shannon Ridge Property). It is undisputed that parts of the Ridout Property, the Benson Property, and the Shannon Ridge Property consist of steep slopes. Access to all three properties is via Northeast 165th Street, a public right of way (ROW).

In November 2019 the Ridouts sued Benson, Hedgerow, and a number of other defendants. The Ridouts alleged that "[i]n or about August of 2016," Hedgerow began construction on NE 165th Street "for . . . utility installation and grading and widening of NE 165th Street." They alleged that this work "required significantly cutting into the toe of the steep slopes on the south portion of the ROW and the north portion of the Benson Property," and that "the cut was not supported or buttressed in any fashion." The Ridouts alleged further:

> On November 24, 2016, a significant landslide began on the ROW and the Benson Property causing extensive soil, vegetation, debris, and other material to slide down the steep slope on the south portion of the ROW and the north portion of the Benson Property as well as onto [the Ridout] Property. The slide caused the east side yard, front yard, porch and driveway of [the Ridout] Property to substantially sink and crack and considerably increased a bulge on the south side of NE 165th Street north of [the Ridout] Property. The major movement progressed through November 27, 2016.
> The proximate cause of the November 24, 2016, landslide was due to improper, negligent, and careless planning, engineering, and construction of the cut into the sleep slopes by . . . Hedgerow [and its contractors], and the complete failure to protect, buttress, and support the steep slopes during construction by said defendants. Said defendants knew, or certainly should have known of prior landslides in the area, the slide plan in the ROW and adjoining properties, as well as on-going

-2-

geotechnical issues in the ROW and the [Ridout] Property.

> The proximate cause of the November 24, 2016, landslide was also due in part to a broken illegal above-ground water line located upon and providing service to the Benson Property, discharging water in a concentrated flow onto the Benson Property, the ROW, and [the Ridout] Property at a high rate of volume and velocity.

The Ridouts' complaint alleged two causes of action. First, it alleged trespass to land solely against defendants other than Benson. Second, it alleged water trespass against Benson,[1] asserting further:

> Defendant Benson . . . , as an adjacent parcel owner to [the Ridout] Property, owed [the Ridouts] a duty with respect to the discharge of water.
> Defendant Benson . . . breached this duty by maintaining, operating, and using an illegal above-ground water line on the Benson Property and failing to keep it in proper repair, resulting in the failure of the water line causing the discharge of water in a concentrated flow onto the Benson Property, the ROW, and [the Ridout] Property, at a high rate of volume and velocity.
> Defendant Benson . . . proximately caused, and continues to cause, substantial damage to [the Ridout] Property.

Mitsunaga, the Ridouts' attorney, signed the complaint.

In May 2020 Benson sent Mitsunaga a "safe harbor" letter in which Benson stated that after receiving the Ridouts' answers to his interrogatories, "[it] appear[ed] to [Benson] that no real investigation was done implicating any aspect of the water pipe or other theory of liability that could possibly lead to a judgment against [Benson]." Benson proposed settlement and stated, "The alternative to this is continued litigation and with this safe harbor letter we will be seeking CR 11 attorney fees, costs and other sanctions for a frivolous lawsuit."

---

[1] The complaint also named 3 S Management Services, LLC (3 S) as a defendant with regard to the water trespass claim. Because it is undisputed that 3 S is Benson's "alter ego," and because any distinction between 3 S and Benson is immaterial to the issues on appeal, we do not distinguish the Ridouts' claim against Benson from their claim against 3 S.

On November 10, 2021, the trial court granted Benson's motion for summary judgment and dismissed him from the Ridouts' lawsuit.

Benson then moved under CR 11 "[f]or a judgment compensating [Benson] for his time and expenses against . . . Mitsunaga, and his associates and/or law firm." Benson argued that the Ridouts' complaint against him "was without an arguable basis [in] fact," yet Mitsunaga "never voluntarily moved for dismissal . . . and forced . . . Benson to participate . . . until [the trial court] granted his Motion for Summary Judgment." Benson asserted that Mitsunaga and the Ridouts "were trying to squeeze out some concessions from [Benson], while at the same time having acknowledged that they had no case." He requested, as a sanction, "compensation" of $148.00 per hour for 1,204 hours, which he attested was the "total time working on th[e] case which includes working with [his] engineer, family [member] witnesses, witnesses, analyzing pleadings, writing pleadings, basic research, gathering evidence and such other items that need[ed] to be done to defend against a construction type lawsuit."

Mitsunaga opposed Benson's CR 11 motion and supplied a declaration describing the information he obtained before filing the Ridouts' complaint and during discovery. Mitsunaga argued that (1) he did not violate CR 11, (2) Benson, who was pro se, was not entitled to compensation in any event, and (3) even if Benson were entitled to compensation for his time, he had offered no proof that he expended the hours he claimed or that those hours were reasonable or necessary.

The trial court denied Benson's CR 11 motion. Benson appeals.

II.

Benson argues that the trial court erred by denying his CR 11 motion. We disagree.

A.

Under CR 11, the signature of an attorney on a pleading, motion, or legal memorandum constitutes, as relevant here, "a certificate by the . . . attorney that the . . . attorney has read the pleading, motion, or legal memorandum, and that to the best of the . . . attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,] it is well grounded in fact." CR 11(a). The rule "imposes no affirmative duty on an attorney to dismiss an action once it has become unreasonable to continue its prosecution." Doe v. Spokane & Inland Empire Blood Bank, 55 Wn. App. 106, 114, 780 P.2d 853 (1989). But CR 11 "does apply to all signed documents filed in the course of a lawsuit." Doe, 55 Wn. App. at 114. "Accordingly, once reasonable inquiry would have revealed that [a party] should be dismissed from th[e] action, [an attorney's] signature on any subsequent pleading, memorandum, or motion in furtherance of th[e] lawsuit . . . would [be] a violation of CR 11." Doe, 55 Wn. App. at 114.

"If a pleading, motion, or legal memorandum is signed in violation of [CR 11], the court . . . may impose upon the person who signed it . . . an appropriate sanction." CR 11(a). The goal of the attorney sanction rule "is to prevent baseless filings and filings made for improper purposes." In re Kelly, 170 Wn. App. 722, 740, 287 P.3d 12 (2012). "A baseless filing is one not supported by the facts or existing law." Kelly, 170 Wn. App. at 740.

We review a trial court's decision whether to grant or deny CR 11 sanctions for an abuse of discretion. MacDonald v. Korum Ford, 80 Wn. App. 877, 884, 912 P.2d 1052 (1996). "'A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons.'" In re Marriage of Mishko, 23 Wn. App. 2d 571, 578, 519 P.3d 240 (2022) (internal quotation marks omitted) (quoting In re Marriage of Muhammad, 153 Wn.2d 795, 803, 108 P.3d 779 (2005)).

B.

Benson construes the Ridouts' complaint as alleging "only a single claim . . . of water trespass occurring on November 24, 2016." He asserts that "[t]hrough the discovery process it became undisputed that the only water leak that occurred was on December 8, 2016 and was in fact caused by a subcontractor . . . working on the roadway." Therefore, Benson argues, Mitsunaga violated CR 11 by not voluntarily dismissing the Ridouts' water trespass claim.

Benson concedes on appeal that Mitsunaga had an adequate basis to file the Ridouts' complaint and did not violate CR 11 when he first signed it. Thus, to establish his alleged CR 11 violation, Benson must point to evidence that Mitsunaga later discovered materials that would cause a reasonable attorney to conclude that the only water trespass that occurred was on December 8, 2016, and that no water trespass occurred on November 24, 2016. See MacDonald, 80 Wn. App. at 884 ("The court must use an objective standard, asking whether a reasonable attorney in like circumstances could believe his or her actions to be factually and legally justified. To avoid being swayed by the benefit of hindsight, the trial court should impose sanctions

only when it is patently clear that a claim has absolutely no chance of success." (internal quotation marks and citations omitted)).

But even construing the Ridouts' complaint as narrowly as Benson does,[2] the discovery materials that Benson relies on establish, at most, that a water line leak occurred on or about December 8, 2016.  For example, Benson cites the Ridouts' discovery responses indicating that Bill Laprade, the City of Kenmore's geotechnical engineer "reported on December 8, 2016, that the water service line on Benson's property had broken and the slope was moving."  He also cites to discovery materials and Mitsunaga's declaration indicating that a "new slide" was discovered on December 8, 2016, and that a water line on the Benson Property broke in December 2016.  Benson does not point to any discovery materials[3] that conclusively rule out a claim that an earlier water trespass also occurred—a claim that, again, Benson concedes initially had an adequate basis.  Accordingly, the trial court had a tenable basis to determine that Mitsunaga did not violate CR 11,[4] and thus it did not abuse its discretion by denying

---

[2] We observe that although the Ridouts alleged that a broken water line on the Benson Property was a proximate cause of a landslide that began on November 24, 2016, they did not allege that the water trespass was limited to that date.

[3] Benson relies in part on his summary judgment motion and his and his witnesses' declarations in support thereof.  But he cites no authority to support the proposition that the trial court was required to accept Benson's assertions and his witnesses' declarations as fact in determining whether Mitsunaga had a factual basis to continue pursuing the Ridouts' water trespass claim.  For this reason, we need not reach Benson's argument that the trial court erred to the extent that it did not consider the declarations of one of those witnesses, Kevin Fallum.  Cf. In re Pers. Restraint of Sickels, 14 Wn. App. 2d 51, 66, 469 P.3d 322 (2020) ("Where no authorities are cited in support of a proposition, we are not required to search out authorities, but may assume that the party, after diligent search, has found none.").

[4] Benson points out that in response to Benson's CR 11 motion, Mitsunaga averred that he had a "spotless professional reputation" and had never been sanctioned before, and described his various professional activities.  He argues that Mitsunaga's reputation and professional activities are irrelevant to whether CR 11 sanctions were warranted.  We have not considered Mitsunaga's reputation or professional activities in determining that the trial court had a tenable basis to conclude that Mitsunaga did not violate CR 11.

Benson's motion for CR 11 sanctions.[5]

Benson disagrees and advances several arguments in support of reversal, but none are persuasive.[6] First, Benson relies on MacDonald, where we affirmed sanctions against an attorney who represented a plaintiff in a sexual discrimination and wrongful discharge action against her former employer. 80 Wn. App. at 880, 888-89. In doing so, we observed that the plaintiff "provided deposition testimony that severely undermined the factual bases for her claims" and that the plaintiff's attorney "continued to rely 'almost exclusively'" on the plaintiff's assurances even after her deposition. MacDonald, 80 Wn. App. at 881-82. Benson asserts that this case is like MacDonald in that "after discovery depositions and interrogatories it became quite clear that there [was] no factual basis for pursuing [the] claim after filing" and that it was "essentially uncontested" after the Ridouts' depositions that "[a]ny water leak due to any line on the Benson Property happened after the landslide event of November 24, 2016."

---

[5] Because we affirm on the basis that the trial court did not abuse its discretion in determining that no CR 11 violation occurred, we do not reach Benson's arguments that the trial court erred inasmuch as it (1) determined that Benson's pro se status precluded the award that Benson sought under CR 11 or (2) concluded that specific findings were required to establish the amount of any such award. Cf. Ladenburg v. Campbell, 56 Wn. App. 701, 703, 784 P.2d 1306 (1990) (this court may affirm the trial court on any basis supported by the record, whether or not the trial court relied on that basis in reaching its decision). In response to those arguments, Mitsunaga asserts that the efforts of Roger Knight, a nonlawyer who has assisted Benson in this litigation, constitute the unauthorized practice of law and are not compensable. To the extent Benson requests to modify the commissioner's earlier rulings prohibiting Knight from representing Benson in this appeal and denying Benson's motion to strike Mitsunaga's assertions about Knight from his respondent's brief, those requests are procedurally improper and are denied. See RAP 17.7. Nevertheless, we need not and have not considered Mitsunaga's assertions concerning Knight.

[6] Benson appeals pro se. Pro se litigants are held to the same standards as attorneys and must comply with all procedural rules on appeal. In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993). One of these rules, RAP 10.3(a)(6), requires the argument section of a brief to include "citations to legal authority and references to relevant parts of the record." To the extent we do not reach any challenges that Benson raises in his appellant's brief, it is because they are not adequately briefed to warrant consideration. See Foster v. Gilliam, 165 Wn. App. 33, 56, 268 P.3d 945 (2011) ("Arguments that are not supported by any reference to the record or any citation of authority need not be considered."); cf. Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) (appellate court "will not consider an inadequately briefed argument").

But although Benson asserted in a declaration that Erica Ridout testified she "did not see any artificial sources of water in observance" increasing water flow,[7] because the Ridouts did not personally observe an artificial water source does not rule out that one existed. And while Benson claims the Ridouts stated that "causation was 'unknown'" in their interrogatory responses, that is not an accurate characterization of the record. According to Benson's declaration below, the relevant interrogatories asked the Ridouts to (1) "describe in detail the size, length, color, inside diameter of the pipe and the breaks in the water" and (2) "identify and set forth the factual basis for [their] contention" that Benson had an illegal water line requiring repair. The Ridouts responded "[u]nknown at this time" to both interrogatories. But their water trespass claim is not, in the parlance of MacDonald, "severely undermined" by the fact that they did not know the specifics of the pipe at issue. And with regard to the latter interrogatory, the Ridouts added that the City of Kenmore's Development Services Director and others "implied to [the Ridouts] that the water line was improperly installed making it more susceptible to freezing and there had been similar problems in the past."[8]

Furthermore, unlike the attorney in MacDonald, Mitsunaga did not rely solely on his clients' assurances in pursuing their water trespass claim—he also relied on a geotechnical report, which noted that "[n]umerous groundwater water conveyance lines were located on the [Benson Property]" and that "[d]ischarge from these lines likely

---

[7] It does not appear that the Ridouts' depositions are in the record.

[8] Benson takes issue with the Ridouts' not having amended their interrogatory answers. But even assuming the Ridouts had a duty to do so, Benson cites no authority for the proposition that their failure to do so is a basis for CR 11—as opposed to discovery—sanctions. Cf. Clipse v. State, 61 Wn. App. 94, 97, 808 P.2d 777 (1991) (CR 11 does not apply to discovery disclosures).

accelerated ground movements or settlements of the Ridout property during the winter of 2015-2016." Additionally, correspondence from one of Hedgerow's contractors stated that when they investigated a "new slide" on December 8, 2016, they also "discovered that there were several breaks in the above-ground water service" above the work area. Finally, and more importantly, although MacDonald held that it was not an abuse of discretion for the trial court to grant the defendant's sanctions motion under the circumstances presented therein; it did not hold that it would have been an abuse of discretion to deny the motion. Benson's reliance on MacDonald is misplaced.

Benson's reliance on Doe, is similarly misplaced. There, the plaintiff admitted at deposition to facts that established his lack of standing to sue the defendants. Doe, 55 Wn. App. at 114-15. Accordingly, we observed, the record contained "no basis in fact for [the plaintiff] having named [the defendants] in this action." Doe, 55 Wn. App. at 114. Here, for reasons already discussed, Benson does not show that discovery established that no water trespass occurred on November 24, 2016. Doe does not require reversal.

Benson next makes several arguments premised on his claims that "it was clear that the Ridouts made a mistake as to the date of the water leak" and that Mitsunaga "absolutely knew" that the Ridouts "had no case." This is so, Benson asserts, because the Ridouts knew that a subcontractor had broken Benson's water line on December 8, 2016, and "that a release [had] been signed [by another defendant] acknowledging fault and settlement had been to the Benson family." But again, Benson concedes that Mitsunaga had an adequate basis for alleging an earlier water trespass in the Ridouts' initial complaint, and a water line break on December 8, 2016—no matter who accepted

responsibility therefor—does not rule out an earlier water trespass.

In support of his claim that Mitsunaga knew that the Ridouts "had no case," Benson also points out that Mitsunaga (1) communicated that the Ridouts were pursuing a global settlement with all defendants that contemplated no payment from Benson and (2) did not file an opposition to Benson's motion to strike certain of the Ridouts' expert reports because the experts were "basing their comments and/or opinion and inferences on inadmissible hearsay."  But as Mitsunaga points out, the evidence rules expressly (1) prohibit the admission of "[e]vidence of conduct or statements made in compromise negotiations" to prove "liability for or invalidity of [a] claim," ER 408, and (2) allow experts to rely on inadmissible evidence to form their opinions.  ER 703.  Benson fails to show that the trial court abused its discretion inasmuch as it rejected the proposition that Mitsunaga's settlement-related communications and his decision not to oppose a flawed motion to strike implicated the viability of the Ridouts' water trespass claim.  Furthermore, even the Ridouts' experts attributed only five percent of the total liability to Benson.  As much as Benson suggests that Mitsunaga "stopped prosecuting" the Ridouts' claim against him, he does not persuade us that a decision not to pursue a claim against one defendant while trying to settle larger claims against the most responsible defendants means that the smaller claim lacks a factual basis.  Nor does he persuade us that Mitsunaga's attempts to leverage the smaller claim to extract concessions from Benson crossed the line from negotiation tactic to sanctionable conduct.  While Benson asserts that Mitsunaga's tactic "forced" him to pursue summary judgment, that is exactly the remedy contemplated under the civil rules if Benson believed the Ridouts could not raise a genuine issue of

material fact on their claim against him.  See CR 56(c).[9]

As a final matter, Benson observes that the Ridouts themselves did not file declarations in support of Mitsunaga.  Because there is a tenable basis in the record to support the trial court's exercise of its discretion even in the absence of such declarations, Benson's observation is inapposite.

III.

Mitsunaga requests an award of fees on appeal, arguing that Benson's appeal is frivolous.[10]  "RAP 18.9(a) provides this court may require the payment of fees by a party who files a frivolous appeal."  Hanna v. Margitan, 193 Wn. App. 596, 615, 373 P.3d 300 (2016).  "An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ and that it is so devoid of merit that there is no possibility of reversal."  Lutz Tile, Inc. v. Krech, 136 Wn. App. 899, 906, 151 P.3d 219 (2007).

Although Benson's arguments on appeal do not entitle him to appellate relief, we are not persuaded that they are so devoid of merit as to warrant an award of attorney fees, particularly considering that Benson has the right to an appeal and "all doubts as to whether [an] appeal is frivolous should be resolved in favor of the appellant."  See Streater v. White, 26 Wn. App. 430, 434-35, 613 P.2d 187 (1980) (setting forth factors

---

[9] To the extent that Benson argues CR 11 sanctions are warranted merely because he prevailed at summary judgment, that argument is without merit.  See Biggs v. Vail, 124 Wn.2d 193, 198, 876 P.2d 448 (1994) ("[T]he imposition of a CR 11 sanction is not a judgment on the merits of an action. 'Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate.'" (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990))); see also Skimming v. Boxer, 119 Wn. App. 748, 755, 82 P.3d 707 (2004) ("The fact that a complaint does not prevail on its merits is not enough.").

[10] Mitsunaga also requests an award of costs.  That request should be directed to the commissioner or court clerk in accordance with RAP Title 14.

this court should consider in determining whether an appeal is frivolous).

We affirm and deny Mitsunaga's request for fees on appeal.

_____Mann, J._____

WE CONCUR:

_____Díaz, J._____          _____Coburn, J._____