**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION  II**

| | |
|---|---|
| In the Matter of the Marriage of<br>RALUCA IULIA VETRICI,<br><br>　　　　　　　　　Respondent,<br><br>and<br><br>GRIGORE CEZAR VETRICI,<br><br>　　　　　　　　　Appellant. | No.  50360-3-II<br><br><br><br><br>UNPUBLISHED OPINION |

WORSWICK, J. — Grigore Vetrici appeals the superior court's decision that ultimately denied his motion to hold Raluca,[1] his ex-wife, in contempt of their dissolution decree and awarding her reasonable attorney fees.  Grigore argues that the trial court erred in not finding Raluca in contempt because it (1) misconstrued the dissolution decree, (2) failed to consider the welfare of the children, and (3) erroneously gave full faith and credit to the Canadian proceedings. Grigore additionally argues that the court improperly imposed CR 11 sanctions against him. Because the record supports the trial court's conclusion that Raluca was not in contempt, we hold that the trial court did not abuse its discretion in denying Grigore's motion for revision and imposing CR 11 sanctions.  We affirm the trial court's order and award Raluca reasonable attorney fees on appeal.

FACTS

Grigore and Raluca were married in Romania in 2003 and have two children.  They later moved to Washington.  During their marriage, they opened a "Registered Education Savings

---

[1] Because Raluca Vetrici and Grigore Vetrici share the same last name, we refer to them by their first names for clarity.  We intend no disrespect.

Plan" (RESP) account in the Royal Bank of Canada. The account was in Raluca's name and the children were listed as beneficiaries.

The Vetricis separated in May 2009, and in June they entered into a separation agreement. Among other things, the agreement stated that both Raluca and Grigore jointly shared child custody. The agreement also stated that personal property was to be divided and that Grigore and Raluca were to receive all accounts they each held individually.

A.      *Dissolution of Marriage*

In May 2010, Raluca filed a petition for dissolution of marriage in Thurston County Superior Court. At the time, Raluca resided in Thurston County, Washington and Grigore and the children resided in British Columbia, Canada. The petition stated that the "Canadian courts have jurisdiction over the children at the present time, due to the children residing in Canada." Clerk's Papers (CP) at 12. The petition further stated that, unless the parties agreed otherwise, Grigore could claim tax exemptions for the children. Raluca filed a copy of the signed June 2009 separation agreement with the Thurston County Superior Court. Grigore joined the petition for dissolution.

Grigore and Raluca later appeared before a superior court commissioner to finalize the dissolution. At the hearing, Grigore asked the commissioner which court, the Washington court or Canadian court, had proper jurisdiction over the RESP account the couple had earlier established:

> [GRIGORE]: One of the assets that we have is a registered education savings plan—I don't know—in the name of the kids. Does this Court take jurisdiction over that? . . .
> THE COURT: The [proposed] decree indicates this Court has no jurisdiction over the children as they reside in Canada.
> [GRIGORE]: That's correct, so would that be a fund with the children, not with the property division then?

2

THE COURT: There is nothing in the findings or the decree that discussed this educational fund.

[GRIGORE]: That's correct.

THE COURT: So there's nothing that mentions it at all, so the Court isn't dealing anything with it. I'm guessing Canada can do that.

[GRIGORE]: Okay. Thank you.

THE COURT: I'm not—nothing I'm signing has anything to do with that. Is that your understanding? It's not mentioned in the paperwork anywhere.

[RALUCA]: Yeah, I know. It was just—it was in my name, so I think in there I mentioned that all accounts in our names stay in our names and in our property.

THE COURT: You say personal and household items currently in your possession. That wouldn't cover a financial account.

[RALUCA]: Okay. That's fine.

THE COURT: So is there an agreement between the parties then that the educational account—I don't know that I can put it with the children if they're minor children. Just put that the educational account for the children is not part of this action?

[RALUCA]: Sure.

CP at 53-54.

After the hearing, the commissioner entered findings of fact and conclusions of law. The commissioner's findings stated that Grigore joined the petition and consented to jurisdiction. The findings further stated that "the educational account for the children was not part" of the action; that the trial court did not have jurisdiction over the children because they resided in Canada "with their father;" and that no parenting plan and child support plan applied. CP at 27. Despite the existence of a separation agreement, a box was checked on the decree indicating that "[t]here is no written separation contract or prenuptial agreement." CP at 26. The commissioner signed and entered the decree. Neither Grigore nor Raluca appealed the decree.

B.    *Canadian Proceedings*

In June 2011, Raluca filed a family claim with the Supreme Court of British Columbia[2] requesting that the children reside with her in Washington. Grigore counterclaimed, requesting

---

[2] The Supreme Court of British Columbia is a trial court.

3

continuation of the current parenting arrangement which provided that he have sole custody and guardianship over the children.

In late 2011, Raluca removed funds from the RESP account, closed the account, and then moved to Vancouver, B.C. One year later, Raluca filed the 2009 separation agreement with the Supreme Court of British Columbia.

In January 2013, Raluca filed an amended notice of family claim with the Supreme Court of British Columbia. Raluca sought joint custody of the children, joint guardianship, and equal time with the children. In response, Grigore requested that the court order Raluca to pay him child support and to repay the amount that she removed from the RESP fund.

Supreme Court of British Columbia then held a trial on the matter. At the conclusion of trial, the court awarded Raluca joint guardianship and equal parenting time. The court denied Grigore's request that Raluca be compelled to repay the funds she had removed from the RESP account. The court further found that the Washington divorce decree "did not deal" with custody or parenting time over the children. The court also awarded costs and fees to Raluca.

Grigore appealed the Supreme Court of British Columbia's order to the Court of Appeal for British Columbia. The Court of Appeal concluded that the Washington court made "no order with respect to the children because they were living in Canada and, therefore, [the Washington c]ourt did not have jurisdiction." CP at 76. The Court of Appeal further concluded that the dissolution decree made no order with respect to the RESP account and that the account became Raluca's property under the parties' 2009 separation agreement. Consequently, the Court of Appeal dismissed Grigore's appeal and awarded fees and costs to Raluca.

C.      *Motion for Contempt*

Seven months after the Court of Appeal for British Columbia rendered its order, Grigore filed a motion for an order to show cause in Thurston County Superior Court, seeking that Raluca be found in contempt of the dissolution decree. Grigore argued that Raluca was in contempt for her failure to comply with the terms of the dissolution decree. Grigore claimed that the dissolution decree included a parenting plan provision stating that the children were to reside with the father. He also asserted that the dissolution decree became the embodiment of a final settlement agreement between the parties. He further argued that because the box was checked in the decree that there was no written separation agreement, Raluca improperly presented the agreement to the Canadian courts. Grigore claimed that the commissioner presiding over the dissolution intended to characterize the RESP account as community property in the dissolution decree. Grigore additionally argued that a provision in the initial petition for dissolution entitled him to claim tax exemptions for the children.

Raluca requested that the court deny Grigore's motion because all of his contempt allegations were decided in Canada, the Washington courts determined that the RESP account was outside Washington jurisdiction, that there was no court order prohibiting Raluca from claiming tax exemptions for the children and that Canada had jurisdiction over the children. Raluca also requested the court award her reasonable attorney fees and costs.

A court commissioner denied Grigore's motion for contempt. The commissioner found that the dissolution decree's "[f]inding[s] of fact/conclusions of law [are] not a court order." CP at 90. The commissioner also found that Raluca was not in contempt of the decree because it either awarded the RESP account to Raluca or left the RESP account issue for the Canadian courts to decide, but did not make any order regarding the account. The commissioner also

found that the decree did not incorporate the 2009 separation agreement. The commissioner reserved ruling on Raluca's request for attorney fees.

Grigore then filed a motion for reconsideration of the commissioner's order denying contempt to the superior court. On review, a commissioner denied Grigore's motion for reconsideration, but removed the earlier finding that "[f]inding[s] of fact/conclusions of law [are] not a court order."

After the commissioner's denial of his motion for reconsideration, Grigore filed a motion to "correct clerical mistake," asserting that the court intended to remove the finding stating that the decree did not incorporate the 2009 separation contract. CP at 101-02. A court commissioner converted Grigore's motion to amend into an "Order to Show Cause re: CR 60 Motion" and set a hearing date for the CR 60 motion. CP at 107.

Before the hearing on the CR 60 motion took place, a court commissioner denied the motion and struck the hearing. The commissioner concluded that a motion to reconsider an order denying reconsideration was improper, and alternatively concluded that there was no clerical mistake.

The day after the commissioner entered the order denying reconsideration, Grigore filed a motion to revise the order denying reconsideration. Raluca then filed a motion seeking reimbursement for all her attorney fees incurred while defending the action due to Grigore's "intransigence." CP at 125.

The superior court then held a hearing on Grigore's motion. During the hearing, Raluca inquired about the motion for fees based on Grigore's intransigence and the repetitive nature of his filings. Grigore told the court that he had not had a chance to respond to the issue of fees. The court reserved ruling on Raluca's request for fees because the court desired to contemplate

whether Grigore's proceedings were in good faith. The court allowed Grigore one week to respond in writing to the fee issue. Grigore filed a brief with the court responding to the issue of fees 14 days later.[3]

On May 19, 2016, the trial court entered findings of fact and conclusions of law denying Grigore's motion for revision. The court found:

> 1. The parties were married in Romania in 2003 and their marriage was dissolved by this court on August 6, 2010.
> 2. At the time of the dissolution the parties were dual citizens of Canada and Romania, and were residing legally in the United States on the [sic] Mr. Vetrici's work visa.
> 3. At the time of the dissolution the parties' two minor children were living in Canada. Therefore, this court did not have jurisdiction over the minor children under the UCCJEA.
> 4. In the dissolution action, the court did not enter a parenting plan nor an order of child support for the minor children.
> 5. Prior to the dissolution, the parties entered into a written property settlement agreement that provided for joint custody of the minor children; each party to keep any property and bank accounts in their name; and $10,000 to Ms. Vetrici. The effect of the agreement was that Mr. Vetrici received the lion's share of the marital assets.
> 6. At the final dissolution hearing on August 6, 2010, this court explained to the parties that it had no jurisdiction over the minor children.
> 7. During this hearing, the court was asked about the children's educational fund, which was held in Ms. Vetrici's name. The court was of the opinion that since it lacked jurisdiction over the children, it also lacked jurisdiction over this fund. The court asked the parties if they agreed that the findings of fact/conclusions of law should state that the educational fund is not a part of the dissolution action; they agreed and signed the findings.
> 8. The findings of fact and conclusions of law, stipulated to and signed by both parties, were entered on August 6, 2010 and stated that the educational fund for the children's benefit is not a part of this action.

---

[3] Ten days after the court entered its order denying his motion to revise, Grigore filed a motion for reconsideration of the court's order denying revision. The court denied Grigore's motion for reconsideration without argument. Grigore did not appeal the denial of this motion for reconsideration.

Later, Grigore also filed a motion to vacate the trial court's order denying his motion for revision asserting that the court's delayed entering of findings precluded him from submitting an appeal to the Washington State Supreme Court. There is no order in the record on appeal disposing of this motion.

9. These findings of fact and conclusions of law also state that there is no separation agreement.

10. Ms. Vetrici sought relief from the Canadian court when she intended to relocate. In his response to that action, Mr. Vetrici sought one-half of the proceeds of the educational account. The matter went to trial on April 25, 2013. The trial judge denied Mr. Vetrici's request for reimbursement for funds in the educational account.

11. Mr. Vetrici appealed the trial order to the Court of Appeals for British Columbia, and the trial court order was upheld on April 7, 2015. In its opinion, the Court of Appeals found that Ms. Vetrici was awarded the educational fund under the terms of the Decree of Dissolution; that Mr. Vetrici received the lion's share of the marital assets; and that it was reasonable for Ms. Vetrici to liquidate the account to make ends meet.

12. Mr. Vetrici is currently seeking review of the appellate court decision with the Canadian Supreme Court.

13. On December 3, 2015, Mr. Vetrici, as a pro se, filed a motion for contempt in Thurston County Superior Court against Ms. Vetrici, alleging, inter alia, that she should be found in contempt for having liquidated the educational account, as well as for claiming the children on her tax returns.

14. In her response to the motion, Ms. Vetrici explained that the issue of the educational account was fully litigated in the Canadian courts, and always in her favor; she also explained that because there was no Washington order of child support, she could not be found in contempt in Washington for having claimed the children on her taxes. Ms. Vetrici asked for attorney's fees for having to respond.

15. This court denied the motion for contempt on December 24, 2015. The court reserved counsel's request for attorney's fees on the basis that Mr. Vetrici claimed he had not received the fee affidavit in a timely manner.

16. Mr. Vetrici filed a motion for reconsideration on January 4, 2016.

17. At the reconsideration hearing on January 26, 2016, the court commissioner removed one irrelevant finding from the order denying contempt, but otherwise denied the motion to reconsider.

18. On January 29, 2016, Mr. Vetrici filed a "motion to amend clerical mistake"; he filed an amended version of this motion on February 1, 2016. He presented this motion and attempted to obtain an ex parte order on the ex parte docket that same day, with notice to Ms. Vetrici's counsel, who appeared on her behalf.

19. At the ex parte hearing on February 1, 2016, the court determined that the "motion to amend clerical mistake" was in fact a CR 60 motion, and entered an order to show cause establishing a hearing for February 16, 2016, as required by CR 60. The court agreed with counsel for Ms. Vetrici that CR 60 does not provide for ex parte relief, and reserved the request for attorney's fees for him having to appear.

20. On February 4, 2016, the court entered an order (without oral argument) that denied reconsideration and struck a hearing set for February 19, 2016. It appears that this denial order was in fact the order on Mr. Vetrici's CR 60 motion,

and the hearing being struck was the February 16, 2016 show cause hearing. Mr. Vetrici never assigned any error to this ruling.

21. On February 5, 2016, Mr. Vetrici filed a motion to revise the order denying reconsideration that was entered on January 26, 2016.

22. Ms. Vetrici filed a motion for attorney's fees on February 16, 2016.

22. [sic] The motion to revise was denied after a contested hearing on March 4, 2016. The court took the request for attorney's fees under advisement.

23. On March 14, 2016, Mr. Vetrici filed a motion for reconsideration of the order denying revision. That motion was denied without oral argument on March 30, 2016.

24. Mr. Vetrici appears to have filed a request for discretionary review of this court's denial of revision with the Washington State Supreme Court.[4]

CP 284-87. The court entered the following conclusions of law:

1. On revision, the court reviews the ruling of the court commissioner de novo.

2. This court affirms the court commissioner's ruling that the motion for contempt be denied, because:

a. The matter involving the children's educational account has been fully litigated in Canada;

b. There is no Washington order . . . for which a party could be found in contempt;

c. The parties stipulated to the entry of the decree of dissolution and findings of fact/conclusions of law, including the provision that the educational account is not a part of this action.

d. The remaining issues raised by Mr. Vetrici in his motion for contempt are . . . without merit . . . .

e. This action is a violation of Civil Rule 11 as is more particularly set forth in the written decision filed separately. Ms. Vetrici is awarded a judgment of $4,808 for her reasonable attorney fees against Mr. Vetrici.

CP at 288. That same day, the court also entered a written decision. The decision, in relevant part, stated:

Reading the decision of the Court of Appeal of British Columbia dated April 7, 2015 is enlightening as to the efforts taken by Mr. Vetrici to marginalize Ms. Vetrici as a parent and limit her resources. Mr. Vetrici is now seeking court orders from Washington Courts covering the same issues as were previously litigated in Canada. He has sought a finding of contempt for something (the separation contract) that was expressly not recognized in the Washington Decree of Dissolution of Marriage and therefore is not a court order susceptible to a finding of contempt.

---

[4] On April 1, 2016, Grigore filed a notice of appeal in the Washington State Supreme Court seeking review of the trial court's March 4, 2016.

His actions in this Court appear to be a willful attempt to further punish Ms. Vetrici for using the minimal funds that were available to her following the parties' separation. There being no reasonable legal basis for his claim, this litigation is (1) not well grounded in fact; (2) not warranted by existing law or a good faith extension, modification, or reversal of existing law or the establishment of new law; and (3) interposed for an improper purpose, to wit: to harass and further impoverish Ms. Vetrici. As such, this action violates Civil Rule 11 and Ms. Vetrici is entitled to an award of fees. Her counsel has submitted a fee affidavit setting forth $4808 in attorney's fees and costs. The amount incurred appearing reasonable and in response to the motions filed in this Court, fees in the amount of $4808 are awarded to Ms. Vetrici.

CP at 289-90.

Grigore now appeals the trial court's March 4 and May 19 orders.[5]

ANALYSIS

I. CONTEMPT

Grigore argues that the trial court erred in denying revision of the order finding that Raluca was not in contempt of the dissolution decree. Grigore assigns error to numerous findings of fact and additionally argues that the trial court misconstrued the dissolution decree, failed to consider the welfare of the children, and erroneously gave full faith and credit to the Canadian proceedings. As discussed below, we do not consider the merits of these arguments and hold that the trial court's findings are supported by substantial evidence and that the conclusions of law are supported by the findings of fact.[6] Consequently, we hold that the trial court did not err in not finding Raluca in contempt.

---

[5] Grigore appealed to the Supreme Court. On May 3, 2017, the Supreme Court transferred the case to this court for review.

[6] Raluca argues that we should not consider many of Grigore's arguments in addition to responding to his arguments on the merits. And although Raluca cites to the proper standard of review, she fails to employ this standard in her arguments. We do not address Raluca's affirmative arguments, but rather address whether substantial evidence supports the challenged findings of fact and whether the findings of fact support the conclusions of law.

A.      *Legal Principles*

We first discuss the standard of review. Here, the trial court reviewed documents and declarations, and then drafted findings of fact and conclusions of law based on those documents. Generally, we are not bound by findings of fact when the findings are based on documents rather than witness testimony. *Danielson v. City of Seattle*, 45 Wn. App. 235, 240, 724 P.2d 1115 (1986), *aff'd*, 108 Wn.2d 788, 742 P.2d 717 (1987). However, we recognize that because CR 52(a)(2)(B) requires the trial court to enter findings of fact in domestic relations cases, including trial by affidavit, and because the trial court has the benefit of oral argument, the trial court's findings of fact after a trial by affidavit are reviewed for substantial evidence. *See In re Marriage of Stern*, 68 Wn. App. 922, 928-29, 846 P.2d 1387 (1993).

Although the contempt hearing in this case was not technically a "trial by affidavit" as discussed in *Stern*, it was a domestic relations hearing involving the court's consideration of events transpiring after entry of a dissolution decree and requiring the court to consider declarations, documents, and argument by the parties or their attorney. *See* CR 52(a)(2)(B); *see also Stern*, 68 Wn. App. at 929 n.5, 932 (holding that where the trial court is required by CR 52(a)(2)(B) to enter written findings and conclusions we are not free to disregard them). Consequently, our review is to determine whether substantial evidence supports the findings of fact, and if so, whether the findings, in turn, support the trial court's conclusions of law. *In re Marriage of Rockwell*, 141 Wn. App. 235, 242, 170 P.3d 572 (2007); *see also In re Marriage of Rideout*, 150 Wn.2d 337, 351, 77 P.3d 1174 (2003) (holding that the substantial evidence standard of review should be applied where competing documentary evidence was weighed and conflicts resolved).

We review a trial court's decision in a contempt proceeding for an abuse of discretion. *In Re the Marriage of Williams*, 156 Wn. App. 22, 27, 232 P.3d 573 (2010). An abuse of discretion standard is appropriate when the trial court is generally in a better position than the appellate court to make a given determination. *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *Katare v. Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). A trial court's decision is based on untenable grounds if the court's factual findings are not supported by the record. *Matter of L.H.*, 198 Wn. App. 190, 194, 391 P.3d 490 (2016). As long as the trial court's findings of fact are supported by substantial evidence, they will not be disturbed on appeal. *In re Marriage of Rockwell*, 141 Wn. App. at 242. Evidence is substantial if it exists in a sufficient quantum to persuade a fair-minded person of the truth of the declared premise. *In re Marriage of Burrill*, 113 Wn. App. 863, 868, 56 P.3d 993 (2002).

B.     *Findings of Fact Supported by Substantial Evidence*

Grigore assigns error to 11 findings of fact entered by the trial court on review of his motion for revision. Any unchallenged findings of fact are verities on appeal. *Hornback v. Wentworth*, 132 Wn. App. 504, 508, 132 P.3d 778 (2006). Grigore does not assign error to findings of fact 1, 8, 9, 12, 14, 15, 16, 18, or 20-24. Thus, these findings are verities on appeal.[7]

   i. *Finding of Fact 2*

Grigore first assigns error to the trial court's finding of fact 2, which states: "At the time of the dissolution, the parties were dual citizens of Canada and Romania, and were residing

---

[7] Grigore compounds arguments in this section, attempting to relitigate the meaning of the decree and arguing about the legal conclusions derived by the trial court. Because the assignments of error are to findings of fact, we address his arguments only in the context of evidentiary sufficiency.

legally in the United States on the [sic] Mr. Vetrici's work visa." CP at 284. Grigore argues that this finding is erroneous because Raluca's attorney misrepresented Raluca's residency status to the court based on the fact that Raluca's declaration is not in chronological order. Br. of Appellant at 41.

The final dissolution decree noted that Raluca was a resident of Washington. Whether Raluca was a *student* at the time is immaterial. *Griffith v. Dep't of Employment Sec.*, 163 Wn. App. 1, 8, 259 P.3d 1111 (2011) (holding that an erroneous finding that is also an immaterial finding is not a basis for granting relief). Grigore does not argue that Raluca was not a resident of Washington. This finding is supported by substantial evidence.

ii. *Finding of Fact 3*

Grigore next assigns error to the trial court's finding of fact 3, which states: "At time of the dissolution, the parties' two minor children were living in Canada. Therefore, this court did not have jurisdiction over the minor children under the [Uniform Child Custody Jurisdiction and Enforcement Act] UCCJEA." CP at 284. Grigore makes numerous arguments regarding this finding arguing that the trial court "did not establish sufficient facts for jurisdiction" and misapplied the law to the facts. Br. of Appellant at 41. Thus, he argues that insufficient evidence supports the finding and also appears to argue that the legal conclusion contained in the finding (that the court did not have jurisdiction under the UCCJEA) is erroneous.

At the hearing, the commissioner inquired, and the parties agreed, that the children were living in Canada and that the court did not have jurisdiction over the children. Moreover, the joined petition for dissolution states, "The Canadian Courts have jurisdiction over the children at the present time, due to the children residing in Canada." CP at 12. Finally, the decree, which

Grigore did not appeal, states, "The court has no jurisdiction over the children as they reside in Canada with father." CP at 40. Finding of fact 3 is supported by substantial evidence.[8]

### iii. *Finding of Fact 4*

Grigore assigns error to the trial court's finding of fact 4, which states that "[i]n the dissolution action, the court did not enter a parenting plan nor an order of child support for the minor children." CP at 284. Grigore argues that the decree contains a parenting plan. He is mistaken.

Grigore concedes that there is no separate parenting plan or child support order entered on separate mandatory forms. Nonetheless, he argues that because the decree states that "'[t]he court has no jurisdiction over the children as they reside in Canada with the father,'" the decree is, in fact, a parenting plan. Br. of Appellant at 26 (quoting CP at 40). But the dissolution decree expressly states that no parenting plan nor child support plan applied. Finding of fact 4 is supported by substantial evidence.

### iv. *Finding of Fact 5*

Grigore also assigns error to the trial court's finding of fact 5, which states:

> Prior to the dissolution, the parties entered into a written property settlement agreement that provided for joint custody of the minor children; each party to keep any property and bank accounts in their name; and $10,000 to Ms. Vetrici. The effect of the agreement was that Mr. Vetrici received the lion's share of the marital assets.

CP at 285. Grigore argues that the trial court was required to examine "whether the BC [sic] court had jurisdiction and make[] its own findings." Br. of Appellant at 42. He further argues

---

[8] This finding of fact also contains the conclusion of law that the trial court did not have jurisdiction over the children. We do not address Grigore's argument in this regard because whether Raluca committed contempt is not dependent on this conclusion. As discussed below, contempt requires a plain violation of a court order. Even if the trial court did have jurisdiction over the children, Raluca did not plainly violate any terms of the decree.

that the British Columbia court's orders contradicted the terms of the dissolution decree because the decree contained a checked box indicating there was no written separation agreement. He asserts that this checked box shows that the decree voided the terms of the settlement agreement. His arguments are barely related to this finding of fact.

Raluca filed a copy of the 2009 separation agreement with the joined petition. Further, Grigore does not assign error to finding of fact 9, which states that there was an agreement in effect even though the dissolution decree's findings state there was no agreement, and finding of fact 9 is a verity on appeal. *See Hornback*, 132 Wn. App. at 508. Thus, finding of fact 5 is supported by substantial evidence.

v. *Finding of Fact 6*

Grigore assigns error to the trial court's finding of fact 6, which states: "At the final dissolution hearing on August 6, 2010, this court explained to the parties that it had no jurisdiction over the minor children." CP at 285. Grigore argues that at the dissolution hearing, the commissioner merely read the decree stipulation and that the commissioner did not explain the denial of jurisdiction. Grigore misconstrues the record.

The transcript of recorded proceedings shows that at the dissolution hearing the commissioner informed the parties that any issue "regarding child support or the parenting plan of these children will be dealt with in Canada." CP at 55. The trial court's finding is supported by substantial evidence.[9]

---

[9] Grigore further argues that denying jurisdiction over the children renders "superfluous" the inquiry of the commissioner regarding whether Grigore and Raluca completed the parenting seminar. There is no evidence that the court required the parties to complete this seminar. The inquiry of the commissioner regarding the seminar is superfluous, not the declination of jurisdiction.

vi. *Finding of Fact 7*

Grigore next assigns error to the trial court's finding of fact 7, which states:

During this hearing, the court was asked about the children's educational fund, which was held in Ms. Vetrici's name. The court was of the opinion that since it lacked jurisdiction over the children, it also lacked jurisdiction over this fund. The court asked the parties if they agreed that the findings of fact/conclusions of law should state that the educational fund is not a part of the dissolution action; they agreed and signed the findings.

CP at 285. Grigore argues that the trial court had subject matter jurisdiction over the RESP account. He further asserts that because the commissioner kept the RESP account with the children, the commissioner exercised jurisdiction over the account. Again, Grigore misconstrues the decree and the commissioner's statements.

The record shows that the court entered into a colloquy with the parties regarding the RESP account and also explicitly stated that the court did not have jurisdiction over the children and therefore the RESP account benefiting the children would not be part of the action. Thus substantial evidence supports finding of fact 7.

vii. *Finding of Fact 10*

Grigore also assigns error to the trial court's finding of fact 10, which stated:

Ms. Vetrici sought relief from the Canadian court when she intended to relocate. In his response to that action, Mr. Vetrici sought one-half of the proceeds of the educational account. The matter went to trial on April 25, 2013. The trial judge denied Mr. Vetrici's request for reimbursement for funds in the educational account.

CP at 285. Grigore appears to argue that the Canadian court did not have the jurisdiction to modify the Washington dissolution decree, because the decree purportedly contained a parenting plan and Raluca did not make the proper showing to modify a parenting plan. But our proper

16

inquiry is whether substantial evidence supports finding of fact 10, not whether the Canadian court improperly modified a Washington court order.

The record is clear that Raluca brought an action in the Supreme Court of British Columbia and that the Supreme Court of British Columbia decided the issue of reimbursement of the RESP account. This finding is supported by substantial evidence.

### viii. *Finding of Fact 11*

Grigore also assigns error to the trial court's finding of fact 11, which states:

> Mr. Vetrici appealed the trial order to the Court of Appeals for British Columbia, and the trial court order was upheld on April 7, 2015. In its opinion, the Court of Appeals found that Ms. Vetrici was awarded the educational fund under the terms of Decree of Dissolution; that Mr. Vetrici received the lion's share of the marital assets; and that it was reasonable for Ms. Vetrici to liquidate the account to make ends meet.

CP at 285-286. Grigore appears to argue that the Canadian court came to the wrong conclusion. Again Grigore's argument misses the mark.

We review finding of fact 11 for substantial evidence and do not review the propriety of the Canadian court order. Finding of fact 11 merely recites the Court of Appeal of British Columbia's order. That order concluded that the Washington court made "no order with respect to the children because they were living in Canada and, therefore, [the Washington c]ourt did not have jurisdiction." CP at 76. The Court of Appeal further concluded that the dissolution decree made no order with respect to the RESP account and that the account became Raluca's property under the parties' 2009 separation agreement. The Court of Appeal dismissed Grigore's appeal. Thus, substantial evidence exists to support finding of fact 11.

### ix. *Finding of Fact 13*

Grigore also assigns error to the trial court's finding of fact 13, which states:

17

On December 3, 2015, Mr. Vetrici, as a pro se, filed a motion for contempt in Thurston County Superior Court against Ms. Vetrici, alleging, inter alia, that she should be found in contempt for having liquidated the educational account, as well as for claiming the children on her tax returns.

CP at 286. Grigore argues that the date of the contempt motion that he filed was November 10 2015. Grigore also asserts that he adduced relevant evidence before December 3. Although Grigore is correct that the court misstated the date Grigore filed that motion for contempt, the court's misstatement is inconsequential. *See MH2 Co. v. Hwang*, 104 Wn. App. 680, 684-85, 16 P.3d 1272 (2001) (holding that the wording of the court's finding of fact was incorrect but also inconsequential to the overall finding). The record supports that Grigore filed a motion for contempt, regardless of the date it was filed.

x. *Finding of Fact 17*

Grigore also assigns error to the trial court's finding of fact 17, which states: "At the reconsideration hearing on January 26, 2016, the court commissioner removed one irrelevant finding from the order denying contempt, but otherwise denied the motion to reconsider." CP at 286. Grigore asserts that the finding of fact removed by the commissioner was not irrelevant, but makes no legal argument as to how this particular finding was relevant.

The record shows that the order entered by the commissioner did, in fact, remove the finding that "finding[s] of fact [and] conclusions of law [are] not [orders]." *See* CP at 90; CP at 100. This finding is supported by substantial evidence.

xi. *Finding of Fact 19*

Grigore also assigns error to the trial court's finding of fact 19, which stated:

> At the ex parte hearing on February 1, 2016, the court determined that the "motion to amend clerical mistake" was in fact a CR 60 motion, and entered an order to show cause establishing a hearing for February 16, 2016, as required by CR 60. The court agreed with counsel for Ms. Vetrici that CR 60 does not provide for ex parte relief, and reserved the request for attorney's fees for him having to appear.

CP at 287. Grigore argues that this finding is unfounded because the hearing was not ex parte because Raluca's counsel was present. It is well established that a party's attorney can be present at a hearing on an ex parte motion. Further, the record clearly shows that the commissioner converted Grigore's motion to amend to a CR 60 motion. This finding is supported by substantial evidence.

Because all of the trial court's germane findings of fact were supported by substantial evidence we next examine whether these findings support the trial court's conclusion that Raluca was not in contempt of a court order.

## C. *Raluca Not in Contempt*

Grigore argues that Raluca should be held in contempt for disobeying the terms of the dissolution decree and for litigating the 2009 separation agreement in Canada. We disagree.

RCW 7.21.010(1)(b) defines "contempt" as "intentional . . . [d]isobedience of any lawful judgment, decree, order, or process of the court." The primary purpose of civil contempt power is to coerce a party to comply with an order or judgment. *State v. Breazeale*, 144 Wn.2d 829, 842, 31 P.3d 1155 (2001). In determining whether the facts support a finding of contempt, we strictly construe the order to see whether the alleged conduct constitutes a plain violation of that order. *See In re Marriage of Eklund*, 143 Wn. App. 207, 213, 177 P.3d 189 (2008) (citing *In re Marriage of Humphreys*, 79 Wn. App. 596, 599, 903 P.2d 1012 (1995)).

Here, to find Raluca in contempt, we would need to find that Raluca plainly violated a court order. Contrary to Grigore's arguments, the findings of fact are supported by substantial evidence and show that Raluca did not violate any provision of the dissolution decree or any order prohibiting Raluca from bringing the 2009 separation agreement in front of a Canadian court. The trial court concluded that the matter involving the children had been fully litigated in Canada; that the parties stipulated to the decree;[10] that the RESP account was not part of the dissolution action; and that the remaining issues raised by Grigore in his motion for contempt were unclear and without merit.[11]

Because the findings of fact are based on substantial evidence, the court properly supported its conclusion that Raluca was not in contempt. As such, the trial court did not abuse its discretion in denying Grigore's motion for revision of the order denying contempt.

## II. CR 11 SANCTIONS

Grigore next argues that the court erroneously imposed CR 11 sanctions against him. We disagree and affirm the trial court's order of CR 11 sanctions.

A.    *Reasonable Inquiry and Improper Purpose*

Grigore argues that trial court improperly imposed CR 11 sanctions because the court did not make a finding of that Grigore failed to conduct a reasonable inquiry into the factual and legal bases of the claims. Grigore asserts that although the court decided there was no reasonable legal basis for Grigore's contempt claim, the court nevertheless found the complaint

---

[10] Grigore did not assign error to finding of fact 8, which states in part, "The findings of fact and conclusions of law [of the dissolution decree], stipulated to and signed by both parties, were entered on August 6, 2010." CP at 240.

[11] The remaining findings were either inconsequential or supported by substantial evidence.

sufficient to make a determination as to one of the principal merits of the cause of action, that the 2009 agreement was void. Because the trial court ruled that Grigore's litigation was imposed for an improper purpose, his arguments fail.

The imposition of CR 11 sanctions is reviewed for abuse of discretion. *Engstrom v. Goodman*, 166 Wn. App. 905, 916-17, 271 P.3d 959 (2012). CR 11 sanctions are available against a pro se litigant for filing a claim for an improper purpose, *or* if the claim is not grounded in fact or law and the signing litigant failed to conduct a reasonable inquiry. *In re Recall of Lindquist*, 172 Wn.2d 120, 136, 258 P.3d 9, 17 (2011). CR 11. CR 11 is directed to remedy situations "'where it is patently clear that a claim has absolutely no chance of success.'" *Saldivar v. Momah*, 145 Wn. App. 365, 404, 186 P.3d 1117 (2008) (quoting *Doe v. Spokane & Inland Empire Blood Bank*, 55 Wn. App. 106, 122, 780 P.2d 853 (1989)). A trial court must also make findings specifying the sanctionable conduct in order for the court to impose sanctions for filing a baseless complaint. *Stiles v. Kearney*, 168 Wn. App. 250, 262, 277 P.3d 9 (2012). If any pleading, motion, or legal memorandum is made for "an improper purpose" the court may award attorney fees. *See In re Kelly*, 170 Wn. App. 722, 740, 287 P.3d 12 (2012). Improper purposes include "to harass or to cause unnecessary delay or needless increase in the cost of litigation." CR 11(a)(3).

Here, the trial court specifically found that Grigore's motion was (1) not well grounded in fact; (2) not warranted by existing law or a good faith extension, modification, or reversal of existing law or the establishment of new law; and (3) interposed for an improper purpose. The court also found that Grigore's motion intended to "harass and further impoverish" Raluca. CP at 290.

Grigore argues that the trial court's finding that Grigore's actions intended "'to further punish [Raluca] for using the minimal funds that were available to her following the parties' separation'" and "'to marginalize [Raluca] as a parent and limit her resources'" was unfounded. Br. of Appellant at 43 n.30 (quoting CP at 290). He also argues that Raluca never argued that she was being harassed by Grigore. On both counts we disagree.

The record shows that Raluca filed a declaration in response to Grigore's motion for contempt in which she stated that she has had to expend money to hire an attorney in Washington to defend against Grigore's meritless contempt proceedings. Raluca also submitted an affidavit from her attorney outlining the fees that Raluca incurred for having to defend Grigore's motion for contempt. Moreover, in Raluca's motion seeking fees, she stated that Grigore was using the legal system to harass her. Thus, these findings of fact are supported by substantial evidence.

Despite his attempts to reach the merits of the divorce decree, Grigore was unable to provide the trial court with any valid legal support for his claim that Raluca committed contempt by her actions. It is clear that Grigore's claims had no chance of success. The trial court's affirmative finding that the litigation was imposed for an improper purpose is sufficient to support CR 11 sanctions. Because we recognize that the trial court is in the best position to evaluate credibility and weigh evidence the trial court's conclusions that Grigore intended to impoverish and harass Raluca are supported by substantial evidence, the trial court did not abuse its discretion in ordering CR 11 sanctions. *See State v. Thompson*, 190 Wn. App. 838, 846, 360 P.3d 988 (2015), *review denied*, 185 Wn.2d 1012, 367 P.3d 1083 (2016) (holding that the trial court is in the best position to evaluate credibility). We therefore hold that the trial court's bases for imposing CR 11 sanctions on Grigore were proper.

B.      *Due Process*

Grigore also argues that the trial court failed to provide him due process when the court ordered sanctions against him under CR 11. Grigore asserts that the court provided no specific notice that the court would impose CR 11 sanctions. He also argues that the court gave him no opportunity to respond to the CR 11 sanctions. We disagree.

CR 11 motions must comport with due process. *Bryant*, 119 Wn.2d at 224. But due process does not require any particular form or procedure. *Bryant*, 119 Wn.2d at 224. It requires only that a party receive notice of proceedings and an opportunity to present its position before a competent tribunal. *Bryant*, 119 Wn.2d at 224.

Here, Grigore was expressly notified of the proceedings regarding fees and the court's inquiry as to whether Grigore's actions were in good faith. Although the court informed the parties that there would be no oral argument on the issue of fees, the trial court allowed Grigore a week to reply on the issue of fees and stated that it would consider what Grigore submitted in writing. Grigore then filed a brief responding to Raluca's assertions about intransigence and fees. In the same responding brief, Grigore moved the court to award him fees. Because a court only need to afford a party with notice of the proceedings and an opportunity to present its position, we hold that Grigore was provided adequate due process. *See Bryant*, 119 Wn.2d at 224.

Because Grigore was afforded due process and the trial court did not abuse its discretion in concluding that Grigore pursued this litigation for an improper purpose, we affirm the trial court's order of CR 11 sanctions against him.

### III. ATTORNEY FEES

Both Grigore and Raluca request attorney fees and costs on appeal. Grigore argues that the court must apportion fees and costs to him as a matter of law under the contempt statutes. Raluca seeks attorney fees and expenses under RAP 14.2, 18.1, and 18.9. Raluca argues that fees should be granted because Grigore's appeal is frivolous. We deny Grigore's request for fees but grant Raluca's request for reasonable attorney fees under RAP 18.9(a).

RAP 18.1(a) allows a party to recover its reasonable attorney fees and costs on appeal if an applicable law grants that party a right to recover attorney fees and costs. RAP 18.9(a) allows this court to award sanctions, such as a grant of attorney fees and costs to an opposing party, when a party brings a frivolous appeal. An appeal is frivolous if, considering the whole record, this court is convinced there are no debatable issues on which reasonable minds may differ and it is totally devoid of merit. *In re Recall of Boldt*, 187 Wn.2d 542, 556, 386 P.3d 1104 (2017).

Grigore seeks attorney fees under *In re Marriage of Rideout*, 150 Wn. 2d 337. But in *Rideout*, the Supreme Court awarded attorney fees against the father because the wife acted in bad faith in violating a parenting plan. 150 Wn. 2d at 359. Here, because Raluca did not act in bad faith or violate a parenting plan, *Rideout* does not apply and Grigore is not entitled to attorney fees on appeal.

We grant Raluca's request for reasonable attorney fees under RAP 18.9(a). Grigore presented no debatable issues on which reasonable minds could differ because no Washington order exists on which to hold Raluca in contempt. Grigore's claim that Raluca was in contempt is frivolous and we award reasonable attorney fees and costs on appeal to Raluca.

We affirm and award Raluca reasonable attorney fees in an unpublished opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Bjorge, C.J.

_____
Maxa, J.